UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

SOURCE ENTERTAINMENT GROUP,
LLC f/k/a YOUR CASTING
CONNECTION, LLC

          Plaintiff,

    v.

BALDONADO & ASSOCIATES, P.C.,
JOHNATHAN P. SANDER, HECTOR J.
BALDONADO, JR.,

          Defendants.

---

HON. JEROME B. SIMANDLE

Civil Action
No. 06-2706 (JBS)


**OPINION**

**APPEARANCES:**

Mark Soifer, Esq.
FOX ROTHSCHILD, LLP
Midtown Building
1301 Atlantic Avenue, Suite 400
Atlantic City, New Jersey 08401
    Attorney for Plaintiff Source Entertainment Group, LLC

Anthony J. DiMarino, III, Esq.
A.J. DIMARINO, P.C.
57 Euclid Street, Suite A
Woodbury, New Jersey 08096
    Attorney for Defendants Baldonado & Associates, P.C.,
    Jonathan P. Sander and Hector J. Baldonado, Jr.

**SIMANDLE**, District Judge:

    This matter comes before the Court upon two motions: (1) the
motion of Defendants Baldonado & Associates, P.C., Jonathan P.
Sander and Hector J. Baldonado, Jr. (collectively, the
"Defendants") for judgment on the pleadings and (2) the cross-
motion of Plaintiff Source Entertainment Group, LLC ("Source")
for leave to file an amended complaint.  This matter originates

from a lawsuit filed by Source in which it alleges that the
Defendants tortiously interfered with Source's management
contract with child-actor and entertainer, Tiffany Evans.  For
the reasons discussed below, the Court will grant Source's cross-
motion for leave to amend its complaint and allow Source to amend
its complaint consistent with Source's proposed Amended
Complaint. Because the Court will allow Source to amend its
Complaint and because the Amended Complaint clarifies Source's
tortious interference with contract and tortious interference
with prospective economic advantage claims, Defendants' motion
for judgment on the pleadings is moot and will be dismissed.

I.   **BACKGROUND**

   A.   **Facts**

   Tiffany Evans ("Tiffany") is a fourteen-year-old singer and
actress who embarked on a career as a professional entertainer in
2002.  In furtherance of her career, Tiffany along with her
mother and father, Carol and Lonnie Evans ("Mr. and Mrs. Evans")[1]
entered into a series of agreements with Plaintiff Source
Entertainment Group, LLC (formerly known as Your Casting
Connection, LLC), a management and entertainment company.

   One agreement was a management contract (the "Original
Agreement"), which stated that: (1) Source would be the sole and

---

   [1]  Tiffany along with Mr. and Mrs. Evans shall be referred
to collectively as, "the Evanses."

exclusive manager of Tiffany's entertainment career; (2) Source was entitled to twenty percent (20%) of all gross compensation Tiffany received from any and all sources; and (3) the term of the agreement was three years with an option by Source to renew for an additional three years.  The Original Agreement, executed in October of 2002, was between Source and all three of the Evanses.  The second agreement was between Source and Mr. and Mrs. Evans and was titled "Parents Acknowledgment and Understanding" ("Parents Acknowledgment.")  In the Parents Acknowledgment, also executed in October of 2002, Mr. and Mrs. Evans agreed to be bound by all of the terms of the Original Agreement, not to interfere with Source's enjoyment of the Original Agreement and to indemnify and hold Source harmless against any damages or losses arising from the breach of any promises made by Mr. and Mrs. Evans in the Parents Acknowledgment.  In March of 2003, after Mr. and Mrs. Evans sought legal advice, Source and Mr. and Mrs. Evans entered into an agreement supplementing the Original Agreement (the "Supplemental Agreement") which provided Mr. and Mrs. Evans with greater authority to approve contracts negotiated by Source and established a trust fund for Tiffany.  After the Supplemental Agreement was executed, the Original Agreement and Supplemental Agreement were modified and incorporated into one agreement (the "Management Contract").

3

Citing the fact that Tiffany was a minor, Source and the Evanses submitted the Management Contract to the Superior Court of New Jersey, Atlantic County, Chancery Division for approval (the "Chancery Action").[2]  In the course of the Chancery Action, Tiffany was appointed a guardian ad litem, John Ridgway, Esq.  On June 6, 2003, the Hon. George L. Seltzer, J.S.C., approved the Management Contract and asserted continuing jurisdiction over Tiffany's professional business affairs.

During the first three years of the Management Contract, Source secured Tiffany a recording contract with Sony Music Corporation, representation by the William Morris Agency and a steady flow of singing appearances and acting jobs.  At some point in 2006, however, the Defendants came into contact with the Evanses.  At the same time, it appears that Tiffany became unsatisfied with Source's representation of her.  In a letter agreement dated February 23, 2006, Tiffany entered into a retainer agreement with Defendants (the "Retainer Agreement") stating that Tiffany and Defendants agreed that Defendants would represent Tiffany in all aspects of her entertainment career. (Source's Proposed Amended Compl., Ex. H.)  On March 13, 2006, Defendants sent a letter to Source purporting to terminate Source as Tiffany's manager.  (Id., Ex. I.)  The letter (the "March

---

[2]  Neither party has explained the legal significance of judicial approval of the Management Contract.

4

Letter") not only purportedly served to terminate the Management
Contract, but also instructed Source immediately to (1) cease and
desist from representing to third parties that Tiffany is
associated with Source; (2) inform all third parties that Source
is no longer affiliated with Tiffany; and (3) forward all of
Tiffany's files and materials in Source's possession to
Defendants.  Defendants also sent copies of the March Letter to
Tiffany's guardian ad litem (Mr. Ridgway), two attorneys involved
in the Chancery Action (Rudy C. Westmoreland, Esq. and Clement F.
Lisitski, Esq.), as well as a number of Tiffany's professional
contacts (including representatives from the William Morris
Agency, Sony Music, Bank of New York and the accounting firm,
Mintz Rosenfeld).

The fallout from the March Letter was considerable.  First,
according to Source, a number of the performances Source had
booked for Tiffany were cancelled.  Source claims that the
cancellation of these events resulted in a significant loss of
income.  Moreover, Tiffany informed Source that she would only
perform at events sponsored by Sony/Columbia Records and
cancelled a number of other performances.  In addition, also in
March of 2006, Tiffany's guardian ad litem filed a Motion to
Comply with Accounting and Obtain Instruction from the Court in
the Chancery Action seeking the chancery court's instruction

regarding Tiffany's desire to terminate the Management Contract.[3]
The Chancery Court held hearings on April 7, 26 and 27, 2006 and
on May 12, 2006 the Chancery Court issued an order vacating the
its nearly three-year-old Order approving the Management
Contract.  On June 19, 2006, Source filed an appeal that is
currently pending before the Superior Court of New Jersey,
Appellate Division.

**B.    Procedural History**

On June 15, 2006, Source filed this action against
Defendants alleging (1) tortious interference with existing
contractual relations and (2) tortious interference with existing
and prospective economic advantage.  Defendants answered on
September 8, 2006 and filed a motion for judgment on the
pleadings on October 17, 2006.  [Docket Item Nos. 10 and 12.]  On
November 3, 2006, Source filed its brief in opposition to
Defendants' motion for judgment on the pleadings [Docket Item No.
15] and a cross-motion for leave to amend its Complaint under
Rule 15, Fed. R. Civ. P. [Docket Item No. 16] and included a
proposed amended complaint as required by L. Civ. R. 7.1(f).
(See Certification of Mark Soifer, Esq. ¶ 4, Ex. C.)

In the proposed Amended Complaint, Source addressed a number
of the concerns Defendants raised in their motion for judgment on

---

[3]  Until Ridgway filed the motion for an accounting and
seeking instruction, the Chancery Action had been inactive for
over two years (from November 2003 through March 2006).

the pleadings.  Specifically, the proposed Amended Complaint alleges that Source had a valid and enforceable Management Contract and Parents Acknowledgment in place when Defendants committed the tortious conduct.  The proposed Amended Complaint also alleges that Defendants did not have authority to act on Tiffany's behalf and were acting in furtherance of their own personal gain by interfering with contracts and Source's economic advantage.  Finally, the Amended Complaint contains a claim for defamation based on statements made by Defendants in the March Letter.  Defendants filed opposition to Source's motion for leave to amend to which Source replied.  The Court has considered all submissions and did not hear oral argument on these motions.

## II.  DISCUSSION

### A.  Source's Motion to Amend

Although Source filed a cross-motion to amend its complaint after and in response to Defendants' motion for judgment on the pleadings, logic dictates that the Court address Source's motion first, because granting Source's motion would introduce an amended pleading and make Defendants' motion for judgment on the pleadings moot.  See 6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2005)("Once an amended pleading is interposed, the original pleading no longer performs any function in the case . . . ."); Snyder v. Pascack Valley Hosp., 303 F.3d 271, 276 (3d Cir. 2002)("An amended complaint supercedes the

7

original version in providing a blueprint for the future course of a lawsuit"); Bair v. City of Atlantic City, 100 F. Supp. 2d 262, 265 (D.N.J. 2000).

Leave to amend pursuant to Rule 15(a), Fed. R. Civ. P. should be freely granted.  See Foman v. Davis, 371 U.S. 178 (1962); see also Adams v. Gould, Inc., 739 F.2d 858, 864 (3d Cir. 1984).  Such liberality in allowing amendments under Rule 15 ensures that claims will be decided on the merits rather than on technicalities.  Dole v. Arco Chem. Co., 921 F.2d 484, 487 (3d Cir. 1990).  Such a liberal amendment philosophy limits the district court's discretion to deny leave to amend, see Adams, 739 F.2d at 864, and indeed, leave to amend should only be denied if (A) a plaintiff's delay in seeking amendment is undue, motivated by bad faith, or prejudicial to the defendant or (B) the amendment would be futile.  See Foman, 371 U.S. at 182; see also Fed. Deposit Insur. Corp. v. Bathgate, 27 F.3d 850, 874 (3d Cir. 1994); Massarsky v. General Motors Corp., 706 F.2d 111, 125 (3d Cir. 1983).

Defendants argue only that the proposed amendments are futile -- they do not claim that any other bases for denying a motion to amend are present.  Specifically, Defendants argue first that the proposed Amended Complaint fails to state causes of action for tortious interference with contract and prospective economic advantage and that Defendants are immune from liability

for tortious interference claims because they were acting in their capacity as attorneys when they allegedly participated in the tortious conduct.  Second, Defendants argue that the proposed Amended Complaint also fails to state a claim for defamation.

"A proposed amended pleading is clearly futile where it fails to state a claim or would not withstand a motion to dismiss." Bair, 100 F. Supp. 2d at 265 (citing Bathgate, 27 F.3d at 874).  Thus, this Court must review each claim in the proposed Amended Complaint in order to determine whether allowing leave to amend to add each claim would be futile.  See Gundlach v. Reinstein, 924 F. Supp. 684 (E.D. Pa. 1996)(analyzing each claim in a proposed amended complaint separately to determine if leave to amend to add such claim would be futile), aff'd, 114 F.3d 1172 (3d Cir. 1997).

### 1.  Tortious Interference with Existing Contractual Relations (Count One of the proposed Amended Complaint)

Count One of the proposed Amended Complaint alleges that Source had two valid and enforceable contracts (the Management Contract with the Evanses and the Parents Acknowledgment with Mr. and Mrs. Evans) and that Defendants intentionally interfered with both contracts for their personal gain.  (Am. Compl. ¶¶ 76-81.) Under New Jersey law, to establish a claim of tortious interference with contract a plaintiff must prove that: (1) it was a party to an existing contractual relationship; (2) the

defendant intentionally interfered with that contractual relationship; (3) the interference was undertaken with malice; and (4) plaintiff suffered damages resulting from the interference.  See <u>Printing Mart-Morristown v. Sharp Electronics Corp.</u>, 116 N.J. 739, 751 (1989); <u>Norwood Easthill Assocs. v. Norwood Easthill Watch</u>, 222 N.J. Super. 378, 383-84 (App. Div. 1988); <u>Matrix Essentials, Inc. v. Cosmetic Gallery, Inc.</u>, 870 F. Supp. 1237 (D.N.J. 1994).

Defendants make two central arguments in support of their position that granting leave to amend the Complaint would be futile.  First, Defendants argue that Source's tortious interference with contract claim fails because it is based on two contracts that do not exist.  Second, Defendants contend that the claim fails because, at the time of the alleged tortious conduct, Defendants Sander and Baldonado were acting as attorneys and, as such, their conduct is privileged.

### a. Whether Source's tortious interference with contract claim is based on a valid contract

Defendants argue that Source's tortious interference with contract claim is "fatally flawed" because neither the Management Contract nor the Parents Acknowledgment were in existence at the time of the alleged interference.  (Def.'s Opp. to Mot. to Amend Br. at 9-10.)  According to Defendants, minors such as Tiffany have a legal right to render a contract a nullity by disaffirming

10

it at any point up until they attain their majority.[4]  (Id. at
10.)  According to Defendants, Tiffany, acting through her
attorneys, voided the Management Contract on March 13, 2006 when
Defendants sent a letter to Source terminating the Management
Contract.  Because the Management Contract was nullified,
according to Defendants, Source cannot prove an essential element
of their tortious interference with contract claim -- the
existence of a valid contract -- and thus, this claim should be
dismissed.

The Court holds that, based on the proposed Amended
Complaint, Source's claim for tortious interference with contract
is not futile as it would survive a motion to dismiss.[5]  Under

_____

[4]  According to Defendants, this rule is not altered by a
parent's signing of the contract on behalf of the minor or for
contracts that have been judicially approved.

[5]  Whether Tiffany can disaffirm the Management Contract
is an open question. Defendants cite the well-settled legal
principle that minors have a legal right to render a contract a
nullity by disaffirming it at any point until a reasonable time
after they attain their majority. Commissioner of Internal
Revenue v. Allen, 108 F.2d 961, 962 (3d Cir. 1939).  Source
argues that contracts entered into by minors can be enforceable
if the contract is approved by a court.  See Hojnowski v. Vans
Skate Park, 187 N.J. 323, 397 (2006)(LaVecchia, J.
dissenting)(relying on New Jersey Court Rule 4:44 that allows
settlement agreements involving minors to be enforced so long as
a reviewing court determines that the agreement is reasonable).
The Court acknowledges that whether a minor can disaffirm a
judicially-approved agreement (outside the context of a
settlement agreement addressed by New Jersey Court Rule 4:44) is
an unsettled question of law.  See  Hojnowski, 187 N.J. at 397
(noting the absence of New Jersey case law on this point and
discussing statutes from other states that bar minors from
disaffirming judicially-approved contracts while noting that New

New Jersey law, because Tiffany is a minor, the Management Contract is voidable, not absolutely void.  See Feir v. Weil, 92 N.J.L. 610, (E & A 1919)("It is entirely settled that the contract of infants are not absolutely void, but only voidable.") This means that "a minor can render a contract a nullity by disaffirming it at any point upon until a reasonable time after the minor attains his or her majority . . . [and not that] a contract with a minor is a nullity prior to any such disaffirmance."  Aetna Cas. & Surety Co. v. Duncan, 972 F.2d 523, 526 (3d Cir. 1992).  In New Jersey, however, a voidable contract may still afford a basis for a tortious interference claim when a defendant interferes with the performance of the contract. Harris v. Perl, 41 N.J. 455, 461 (1964)(citing Prosser, Torts § 106 (2d ed. 1995)); Fineman v. Indus. Network Sys., Inc., 980 F.2d 171, 189 (3d Cir. 1992).  Thus, because the Management Contract was in existence (even though it was voidable by Tiffany) at the time Defendants allegedly interfered with Source's contractual relations with the Evanses, Source may bring a claim for tortious interference with the Management Contract.

---

Jersey's legislature "has not yet enacted similar legislation"). However, this Court need not address this issue, holding that the Management Contract was only voidable not void and that Source has properly pled the existence of a contract during the time period when Defendants allegedly conducted their tortious conduct.

Regardless of the outcome of Source's claims for tortious interference under the Management Contract, Source's claims for tortious interference would survive with respect to the Parents Acknowledgment.  Because Tiffany is not a party to the Parents Acknowledgment and therefore cannot void it, there is no issue regarding whether it was in existence at the time of the alleged tortious conduct or was voided.  Further, Defendants' argument that Source's tortious interference claim cannot be based on the Parents Acknowledgment because that agreement "related solely to the Original Agreement and the Original Agreement was superceded by the Management Contract" is contrary to the provisions in the preamble of the Management Contract, which clarify that the Parents Acknowledgment remains in effect along with the Management Contract.  Specifically, the preamble states that "the parties, in order to avoid confusion, have requested that both former agreements [the Original Agreement and the Supplemental Agreement] as modified and ordered by the Court be combined into one Agreement for the purposes of interpretation and simplicity without affecting the prior agreements' effective dates and terms . . . ."  (Def.'s Opp. Ex. 1F.)  This provision makes clear that no term of either the Original Agreement, Supplemental Agreement or Parents Acknowledgment was eliminated by the combination of the Original Agreement and Supplemental Agreement and that the Management Contract does not supercede any other agreement.

####     b.    Whether Defendants' actions were privileged

In their brief in opposition to Source's motion for leave to amend, Defendants argue that, because they were serving as Tiffany's attorneys and acting on her behalf then they sent the March Letter terminating the Management Contract, Defendants are immune from liability for tortious interference.  According to Defendants, under New Jersey law an agent such as an attorney, acting within the scope of the authority provided by the principal, cannot be held liable for interfering with contractual relations between the principal and a third party.  Here, Defendants contend that Defendants represented Tiffany under the Retainer Agreement as of the date of its execution, February 23, 2006, and were simply acting on her behalf when they notified Source of Tiffany's purported termination of the Management Contract.  Furthermore, because Defendants were merely operating pursuant to a Retainer Agreement, Source will be unable to demonstrate that Defendants acted with malice and their claim of tortious interference will fail.

In this instance, granting leave to amend would not be futile as Source's tortious interference claim would survive a motion to dismiss on this issue.  In assessing whether Source's claims will survive a motion to dismiss, the question before the court is not whether plaintiff will ultimately prevail; rather, it is whether it can prove any set of facts in support of its

14

claims that would entitle it to relief.  Hishon v. King &
Spalding, 467 U.S. 69, 73 (1984).  Therefore, in deciding a
motion to dismiss, a court should look to the face of the
complaint and decide whether, taking all of the allegations of
fact as true and construing them in a light most favorable to the
nonmovant, plaintiff's allegations state a legal claim.
Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir.
1990).

Here, the proposed Amended Complaint alleges that Defendants
interfered with Source's contractual relations at a time when
Defendants did not have the authority to act on Tiffany's behalf.
(Am. Compl. ¶ 78)  Thus, regardless of when the parties actually
entered into the Retainer Agreement, the Court must take the
Amended Complaint at face value and assume for purposes of this
motion that Defendants lacked such authority.  Second, Source
alleges that Defendants acted in furtherance of their personal
gain when Defendants interfered with the Management Contract (id.
¶ 79, 88) and Parents Acknowledgment (id. ¶ 81, 89).  Taking all
of the allegations of fact as true and construing them in a light
most favorable to Source, as the Court must at this stage in the
proceedings, Source's allegations state a claim for tortious
interference.[6]

---

[6]  Defendants also argue that, because they were acting as
Tiffany's attorneys at the time of the alleged actions, they are
immunized from Source's tortious interference claims.  This

**2.    Tortious Interference with Existing and Prospective Economic Advantage (Count Two of the proposed Amended Complaint)**

In Count Two of the Amended Complaint, Source alleges that it had a reasonable expectation of economic advantage arising from both the Management Contract and Parents Acknowledgment and, by committing certain acts, Defendants intentionally interfered with Source's prospective economic gain.  (Am. Compl. ¶¶ 84-90.) To bring a claim of tortious interference with existing and prospective economic advantage, a plaintiff must show that: (1) it had a continuing or prospective economic relationship or reasonable expectation of economic advantage; (2) the defendant knew of the contract or relationship of expectance; (3) the interference was done intentionally or without justification or excuse; (4) it is reasonably probable that plaintiff's loss was a result of defendant's interference and (5) damages resulted from the interference.  See Lamorte Burns & Co., Inc. v. Walters, 167 N.J. 285, 305-06 (2001); Baldasarre v. Butler, 132 N.J. 278, 293

---

argument is unpersuasive because fact issues exist regarding when Defendants began serving as Tiffany's attorneys and whether Defendants were acting on her behalf when they allegedly engaged in the tortious conduct.  These issues are not properly before the Court at this stage.  Due to the requirements of Rule 11, Fed. R. Civ. P., it is assumed that the allegations of the propose Amended Complaint are well grounded in fact and law after due investigation by Plaintiff's counsel.  If they are not well grounded, their claims will be vulnerable to summary judgment under Rule 56, and possible sanctions under Rule 11, since Defendants have alerted Plaintiff's counsel to the existence of their retainer agreement at the time the alleged tortious conduct occurred.

(1993); Eli Lilly & Co. v. Roussel Corp., 23 F. Supp. 2d 460, 493 (D.N.J. 1998).

Defendants argue that Source's tortious interference claim should be dismissed because Source cannot prove that it had a reasonable expectation of economic advantage after Tiffany purportedly voided the Management Contract on March 13, 2006 and her guardian ad litem filed a Motion to Obtain Instruction regarding Tiffany's desire to terminate the Management Contract with the Chancery Court several days earlier.  Defendants' argument, however, is unpersuasive for several reasons.  First, whether Source's expectation of receiving economic advantage was reasonable or not is not a question for this Court to resolve in when determining whether amendment would be futile.  Second, the guardian ad litem's Motion to Compel Accounting and Obtain Instruction from the Court did not seek to terminate the Management Contract but only sought instruction from the Chancery Court.  Although the motion papers mentioned that Tiffany desired to terminate the Management Contract, the motion simply sought instruction and did not modify, much less terminate, the contractual relations between Source and the Evanses.  While this matter was pending in the Chancery Court, it is plausible that Source had a legitimate expectation to receive -- and in fact did receive -- management commissions based on fees earned by Tiffany.  Thus, the Court finds that allowing Source to amend the

17

complaint to file a tortious interference claim as stated in Count Two of the proposed Amended Complaint would not be futile.


### 3.   Defamation (Count Three of the proposed Amended Complaint)

In its proposed Amended Complaint, Source alleges that the Defendants made false defamatory statements (e.g., that Source "continually mistreated Tiffany") in a March 2006 letter it sent to third parties.  (Amended Compl. ¶¶ 92-97.)  Defendants argue that Source's defamation claim would not survive a motion to dismiss because (1) Defendants acted as Tiffany's attorneys when they sent the March Letter and claim immunity from liability under the so-called "litigation privilege" and (2) Defendants were privileged to defame Source because Defendants' actions were reasonably necessary to protect Tiffany's right to disaffirm the Management Contract.

The Court finds neither of Defendants' arguments persuasive. First, Defendants cannot rely on the "litigation privilege" because the March Letter was not sent in connection with a judicial proceeding and not intended to achieve the objects of any litigation.  Under the litigation privilege, an attorney is absolutely privileged to publish defamatory matters concerning another so long as the communication was "'(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other

18

participants authorized by law; (3) to achieve the objects of the litigation; and (4)  have some connection or logical relation to the action.'"  Hawkins v. Harris, 141 N.J. 207, 216 (1995)(quoting Devlin v. Greiner, 147 N.J. Super. 446, 460 (Law Div. 1977)).

Here, the Defendants are not entitled to immunity under the litigation privilege because the defamatory statements were not made in a judicial or quasi-judicial proceeding.  New Jersey law does not limit the privilege to statements made in a courtroom during trial but extends the privilege to such statements made during settlement negotiations, private conferences with an attorney regarding litigation, and discussions between an investigator-defendant and a witness made during the course of a personal injury litigation.  See Hawkins, 141 N.J. at 216; Ruberton v. Gabage, 280 N.J. Super. 125, 132-34 (App. Div. 1995); Middlesex Concrete Prods. & Excavating Corp. v. Carteret Indus. Ass'n, 68 N.J. Super. 85, 92 (App. Div. 1961).  In contrast to such situations, even though the March Letter references a motion filed by Tiffany's guardian ad litem in the Chancery Action, Defendants' defamatory statements were not made within the course of a judicial proceeding.  The letter was sent in March of 2006, some twenty-six months after the last activity in the Chancery Action.  Defendants had no motion pending before the chancery court, had not entered an appearance on behalf of Tiffany or any

other party in the Chancery Action and no hearings or conferences were scheduled in the Chancery Action.  Because the Chancery Action was inactive, Defendants' argument that the statements were made in the course of these proceedings is unpersuasive.

Even if the statements were made as part of the Chancery Action, the communication from Defendants in the March Letter cannot be said to be intended to achieve the object of the Chancery Action and thus, are not privileged.  The sole purpose of the Chancery Action was for the Chancery Court to approve the Management Contract as "a fair and binding contract for the benefit of Tiffany Evans."  (Proposed Amended Compl. Ex. D.)  The purpose of the March Letter, in contrast, was to (1) terminate the Management Contract, (2) order Source to cease and desist certain activities related to their representation of Tiffany and demand that Source send certain files to Defendants, and (3) serve notice of the purported termination on numerous third parties that were not connected with the Chancery Action (but that were involved in Tiffany's professional career such as representatives of the William Morris Agency, Sony Music, and Tiffany's bankers and accountants).  Indeed, the March Letter was not intended as a settlement discussion nor did it involve any pre-trial discovery matter.[7]

---

[7]  In fact, at best, the letter appears as a warning of the possibility of some future litigation as Defendants threaten to pursue "all additional available legal remedies" if Source fails

Source's argument that the statements made in the March
Letter were privileged because Defendants' actions were
reasonably necessary to protect Tiffany's right to disaffirm the
Management Contract are equally unavailing.  Defendants have
failed to establish that it was reasonably necessary to send the
March Letter to the additional third parties (representatives of
the William Morris Agency, Sony Music, and Tiffany's bankers and
accountants) to protect Tiffany's rights to terminate the
Management Contract.  These third parties had no role in the
Management Contract or its termination.[8]

### III.  DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

Because this Court has found that Source's proposed Amended
Complaint is not futile and the three claims made in the Amended
Complaint are all sufficient to withstand a motion to dismiss,
Defendants' motion for judgment on the pleadings is hereby
dismissed as moot.  See 6 Wright, Miller & Kane, Federal Practice
and Procedure § 1476 (2005)("Once an amended pleading is

---

to comply with its demands.

[8]  Finally, Defendants argue that because the March Letter
was written by Mr. Sander and that Mr. Baldonado had no role in
writing the March Letter, Source should not be allowed to amend
the complaint to include the defamation claim against Baldonado
as it would be futile.  At this time, it would be inappropriate
to dismiss Mr. Baldonado.  Source's proposed Amended Complaint
alleges that he had a role in drafting the March Letter.  The
Court must take the Amended Complaint on its face and take all
Source's allegations as true.  Thus, the Court will allow Source
to proceed with its defamation claim against all Defendants.

interposed, the original pleading no longer performs any function in the case . . . .").

**IV.**   **CONCLUSION**

    For the reasons discussed below, Source's cross-motion for leave to amend its Complaint will be granted and the Court will allow Source to amend its Complaint consistent with the proposed Amended Complaint included with Source's cross-motion for leave to amend.  (Cert. of Mark Soifer, Esq. ¶ 4, Ex. C.)  Because the Court will allow Source to amend its Complaint and because the Amended Complaint clarifies Source's allegations against Defendants regarding Source's tortious interference with contract and tortious interference with prospective economic advantage claims and adds a claim of defamation, Defendants' motion for judgment on the pleadings is moot and will be dismissed.

    The accompanying Order is entered.


**May 31, 2007**              **s/ Jerome B. Simandle**
Date                          JEROME B. SIMANDLE
                                 U.S. District Judge